**UNITED STATES of America, Plaintiff,**

v.

**OGDEN TECHNOLOGY LABORATORIES, INC., Defendant.**

**No. 71–C–1432.**

United States District Court,
E. D. New York.

Sept. 14, 1973.

Robert A. Morse, U. S. Atty., E. D. N. Y., for plaintiff; Henry A. Brachtl, Asst. U. S. Atty., of counsel.

Mendes & Mount, New York City, for defendant; Daniel M. Bianca, New York City, of counsel.

## MEMORANDUM

BARTELS, District Judge.

Defendant, Ogden Technology Laboratories, Inc. ("Ogden"), moves to dismiss the first cause of action in the amended complaint of plaintiff Federal Government, based upon breach of contract, for failure to state a claim upon which relief can be granted, pursuant to F.R.Civ.P. Rule 12(b)(6). Defendant asserts that plaintiff cannot maintain this cause of action for breach of contract by Ogden because plaintiff was not in sufficient privity with defendant to subject defendant to liability.

Plaintiff alleges that through its agent, the Atomic Energy Commission, it entered into a contract with Minnesota Mining and Manufacturing Company ("3M") for the development and testing of certain thermo-electric power supply systems. In turn, 3M entered into a subcontract with the Linde Division of Union Carbide Corporation ("Linde") under which Linde was to design and fabricate and perform certain analytical work on "high temperature vacuum insulation system" ("HTVIS") units. Finally, plaintiff alleges that Linde entered into a contract with Ogden for the latter to test, in its laboratory, six prototype HTVIS units by subjecting them to prescribed shocks and programs of vibration and to report to Linde how the tests were conducted and their results.

After a number of successful tests on various units had been completed, a test of unit B–10–4 resulted in severe damage. Plaintiff alleges that the damage was caused not by any defect in the design of the HTVIS unit, but rather by Ogden improperly administering a shock greatly in excess of that specified in the contract.

Defendant, it is alleged, did not report to Linde the reason for the test failure, i. e., the excess shock. Plaintiff, not knowing of the excess shock administered and believing that the design of the units might have been faulty, caused 3M and Linde to reevaluate the design and determine the cause of failure. Because of the cost plus nature of the contracts between plaintiff, 3M and Linde, and because of clauses in these contracts placing risk of loss or damage to the units on the plaintiff, the plaintiff allegedly expended $500,000 for the reevaluation necessitated by Ogden's breach of its contractual duty to make a proper report of its shock treatment.

■ While we cannot be certain without further evidence, it appears from the complaint that there is a sufficient nexus between the plaintiff and Ogden to justify a claim for relief despite the fact that Ogden is not named as a party in any contract with the United States Government.

We reach this conclusion under the ancient theory of recovery for third-party beneficiaries which was first propounded in *Lawrence v. Fox,* 20 N.Y. 268 (1859), in that plaintiff in this case is an intended beneficiary of the testing contract between Ogden and Linde. The parties agree that New York contract law on third-party beneficiaries controls their rights under the Linde-Ogden contract, and that under New York law " . . . it is well settled that before a third party can enforce a contract in his favor it must clearly appear that the contract was made and intended for his benefit. . . . [T]here must have been an intention on the part of the contracting parties to secure some direct benefit to him." 10 N.Y.Jur. "Contracts" § 239 at 160–62 (1960); *Resinol v. Valentine Dolls, Inc.,* 14 A.D.2d 853, 220 N.Y.S.2d 884 (1st Dep't 1961); *Stafford v. Polar S. S. Corp.,* 44 N.Y.S.2d 509 (Sup.Ct.1943), *aff'd,* 269 App.Div. 946, 58 N.Y.S.2d 101 (2d Dep't 1945). But Ogden does not agree that plaintiff Government was a contractual beneficiary of its contract with Linde. Its relation to the Government, it claims, is too far removed to infer or permit such an intention.

■ We are aware that in the present case there is no pecuniary obligation running from the promisee, Linde, to the third-party Government, as is typically the case where third-parties are permitted to recover on a contract. However, any third-party to whom the promisee owes any duty may be a third-party beneficiary of a contract to perform that duty. 4 Corbin on Contracts § 787 at 97–98 (1951). See *Lait v. Leon,* 40 Misc.2d 60, 242 N.Y.S.2d 776 (Sup.Ct. Queens Co. 1963). It is immaterial whether the duty of the promisee to the

third-party beneficiary arises from a bargain between them or is created by an assumption by the promisee, acting as promisor in a previous contract, of some duty by another to the third-party beneficiary or is a non-contractual duty. RESTATEMENT OF CONTRACTS § 136, comment *f* at 161 (1932). Therefore, since Linde was obligated to report to the Government, albeit by way of an intervening contract with 3M, the Government is entitled to state a claim as a third-party beneficiary as long as the requisite intent to benefit the Government is shown.

■ It has long been recognized that the obligation to perform to the third-party plaintiff need not necessarily be expressly stated in the contract. It may be implied where the contracts and the surrounding circumstances indicate a clear intent on the part of the parties to obligate the promisor. *Weinbaum v. Algonquin Gas Transmission Co.,* 20 Misc.2d 276, 283, 132 N.Y.S.2d 128, 135 (Sup.Ct. 1954), *aff'd,* 285 App.Div. 818, 136 N.Y.S. 2d 423 (2d Dep't 1955). Further, if the terms of the contract require the conferring of a benefit upon a third person, then such a benefit is to be considered as contemplated by the parties and invokes a third-party beneficiary right, even though the major motivation for the contract may be the parties' own advantage. *United States v. Jacobs,* 304 F.Supp. 613 (S.D.N.Y.1969); *Durnherr v. Rau,* 135 N.Y. 219, 32 N.E. 49 (1892). Under these tests, plaintiff clearly is an intended beneficiary. The terms of the writings which form the agreement between Linde and Ogden evidence the fact that the Government was not just an incidental beneficiary of the Ogden obligations to Linde to test and report. Paragraph 29 of Linde's form UC 334–121A entitled "Fixed Price General Terms and Conditions" incorporates by reference Armed Services Procurement Regulations (ASPR) § 9–203(b), 32 C.F.R. § 9.203b(b), whenever the subcontract calls for delivery of performance data, test data or reports, as clearly was the case in the

Linde-Ogden subcontract. This section provides that:

"(1) The Government shall have *unlimited* rights in:

.    .    .    .    .

(iv) Technical data pertaining to end-items components or processes which was prepared for the purpose of identifying sources, size, configuration, mating and attachment characteristics, functional characteristics and performance requirements    .    .    . ." (Emphasis added.)

Further evidence that the Government was an intended beneficiary appears in Linde's request for quotation. On page two of this request Ogden is assured by Linde of defense contract priority over normal commercial orders. This is an indication that the contract was not for the benefit of the two private parties alone but was also for the benefit of the Government. Ogden's own price quotation to Linde in the section labelled "Terms and Conditions" at paragraph 11, states that arrangement can be made to have the testing witnessed and a final report signed by a Government inspector. More significantly, Linde was, by paragraph 15 of its "Fixed Price General Terms and Conditions" made part of the contract, entitled to terminate the subcontract "when it is in the best interest of the Government." By this clause, it is evident that Ogden was aware that the Government involvement in its contract was central, intentional, and in no way just incidental.

Further, the writings are replete with other clauses showing the Government's central role in the contract, such as those requiring Ogden to comply with Government policy by placing any subcontracts it makes in areas with labor surplus or with small businesses where possible. We cannot agree with the defendant that the contracts in no way indicate an intent to convey beneficial rights to the Government. See *United States v. Carpenter,* 113 F.Supp. 327 (E.D.N.Y.1949); *Lait v. Leon, supra.*

Therefore, the motion to dismiss the first cause of action in the amended complaint must be, and hereby is, denied without denying Ogden an evidentiary hearing to otherwise defeat plaintiff's claim.